IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

STATE V. MILTON

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,

V.

DINERO MILTON, APPELLANT.

Filed April 29, 2025.    No. A-24-961.

Appeal from the District Court for Douglas County: JAMES M. MASTELLER, Judge. Affirmed.

Timothy J. Anderson, of Dornan, Troia, Howard, Breitkreutz, Dahlquist & Klein, P.C., L.L.O., for appellant.

Michael T. Hilgers, Attorney General, and Teryn Blessin for appellee.

RIEDMANN, Chief Judge, and MOORE and WELCH, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

The driver of a vehicle involved in a drive-by shooting appeals the denial of his motion to transfer his case to the juvenile court. Finding no abuse of discretion in the district court's decision that a sound basis for retention in the district court exists, we affirm.

## BACKGROUND

Dinero Milton, born in October 2007, was charged in the district court for Douglas County with one count of discharging a firearm at an inhabited house, occupied building, or occupied motor vehicle, a Class ID felony, and one count of use of a deadly weapon (firearm) to commit a felony, a Class IC felony. The charges arose out of a shooting that occurred on May 8, 2024, in

- 1 -

which Milton was alleged to be the driver, but not a shooter. At the time, Milton was 16 years old and had absconded from his placement at the Omaha Home for Boys (OHB).

Milton subsequently filed a motion to transfer his case to the juvenile court. At an evidentiary hearing on Milton's motion held on December 6, 2024, the court received 18 exhibits into evidence without objection, including police reports related to the shooting, transcripts of Milton's five prior juvenile court cases, various juvenile intake summaries, and case manager and probation reports. No testimony was adduced.

The exhibits reflect that Milton first became involved in the juvenile justice system in November 2021 at which time a petition was filed charging Milton with seven counts including robberies, possession of a handgun by a minor, use of a deadly weapon (firearm) to commit a felony, and unlawful occupancy. The salient facts involved allegations of Milton having participated in a robbery at gunpoint, was found in possession of stolen vehicles, and had beat his older sister until "her face was bloody." Milton ultimately entered pleas of admission to robbery and possession of a handgun by a minor.

Milton was placed on probation for an open-ended period. A psychological evaluation recommended that Milton be placed in a highly structured out of home placement; he was placed at the OHB and was later returned to his mother's home in early January 2023. Due to continued violations, Milton was ordered to be placed back at OHB and on June 3, 2024, he was committed to a youth rehabilitation and treatment center (YRTC). At that time, the court found that

> all levels of probation supervision have been exhausted and all options for community-based services have been exhausted. The child has been provided with the following services: a. [OHB] Shelter placement; b. Psychological evaluation; c. Chemical dependency evaluation; d. Psychiatric evaluation; e. Sex offense evaluation; f. [OHB] group home placement; g. Day reporting; h. Family Support Worker services; i. Gang intervention; j. Multisystemic Therapy.

The second juvenile case was filed on January 31, 2022. It alleged that Milton had committed burglary and false imprisonment in the first degree. Milton admitted to the allegations and the court ordered that he continue to be detained and undergo a psychological evaluation. He was further ordered to undergo a psychosexual evaluation and chemical dependency evaluation. He was ordered to participate in, and successfully complete, a level 1 treatment with a dual-diagnosis provider, participate in, and successfully complete, long-term individual therapy with an emphasis on appropriate sexual behavior, and undergo a psychiatric evaluation.

As set forth above, Milton was accepted at OHB, and his path followed that as outlined above.

In the third juvenile case, filed February 13, 2023, it was alleged that Milton had committed the offense of disorderly conduct. Milton eventually entered an admission to the allegation, and he was placed under the supervision of a probation officer and ordered to undergo a psychiatric evaluation. He was eventually placed at the OHB and, as set forth above, was later committed to the YRTC.

The fourth juvenile case was filed on August 29, 2023, and asserted that Milton had engaged in attempted theft by unlawful taking $5,000 or more and criminal mischief $5,000 or more. Milton entered a plea of admission to the criminal mischief claim and the other claim was

dismissed. The court ordered Milton to remain at OHB until he was committed to the YRTC in June 2024.

The final juvenile petition was filed on May 15, 2024, and the State alleged that Milton had committed the offense of theft by receiving $5,000 or more. That allegation was later amended to theft by receiving $1,500 to $5,000, and Milton admitted to that allegation. Milton was placed on intensive supervision probation and committed to the YRTC.

The facts related to the present case reveal that Milton absconded from OHB to meet up with some acquaintances with the intent to fire retaliatory shots at an Omaha home. One of its residents was a rival gang member who had allegedly fired shots at the home of one of the vehicle's occupants. The vehicle had been stolen, and Milton's cell phone was located in the pocket of a jacket that had been left behind when the vehicle was abandoned. Although Milton denied being present at the time of the shooting, another occupant stated Milton was present but was hesitant because he had to return to the group home; eventually, Milton said "fuck that shit, do it." They then drove around the block before the other two occupants shot at the house.

In its order denying Milton's motion to transfer his case to the juvenile court, the district court analyzed each of the factors set forth in Neb. Rev. Stat. § 43-276 (Cum. Supp. 2022). It found that all of the factors supported a finding that a sound basis existed to retain the case in the district court except for three factors: the juvenile's bests interests, whether the victim or juvenile agree to participate in restorative justice, and the absence of a juvenile court order pursuant to Neb. Rev. Stat. § 43-2,106.03 (Reissue 2016). Milton appeals.

ASSIGNMENT OF ERROR

Milton assigns that the district court abused its discretion in denying his motion to transfer because the State failed to meet its burden to show a sound basis existed for the district court to retain jurisdiction.

STANDARD OF REVIEW

A trial court's denial of a motion to transfer a pending criminal proceeding to the juvenile court is reviewed for an abuse of discretion. *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). An abuse of discretion occurs when a trial court's decision is based upon reasons that are untenable or unreasonable or if its action is clearly against justice or conscience, reason, and evidence. *Id.*

ANALYSIS

Neb. Rev. Stat. § 43-246.01(3) (Reissue 2016) grants concurrent jurisdiction to the juvenile court and the county or district courts over juvenile offenders who (1) are 11 years of age or older and commit a traffic offense that is not a felony or (2) are 14 years of age or older and commit a Class I, IA, IB, IC, ID, II, or IIA felony. Actions against these juveniles may be initiated either in juvenile court or in the county or district court. In the present case, both allegations against Milton put him within this category of juvenile offenders.

When an alleged offense is one over which both the juvenile court and the criminal court can exercise jurisdiction, a party can move to transfer the matter. For matters initiated in criminal

court, a party can move to transfer it to juvenile court pursuant to Neb. Rev. Stat. § 29-1816(3) (Cum. Supp. 2022).

In the instant case, when Milton moved to transfer his case to juvenile court, the district court conducted a hearing pursuant to § 29-1816(3)(a), which subsection requires consideration of the following factors set forth in § 43-276:

(a) The type of treatment such juvenile would most likely be amenable to; (b) whether there is evidence that the alleged offense included violence; (c) the motivation for the commission of the offense; (d) the age of the juvenile and the ages and circumstances of any others involved in the offense; (e) the previous history of the juvenile, including whether he or she had been convicted of any previous offenses or adjudicated in juvenile court; (f) the best interests of the juvenile; (g) consideration of public safety; (h) consideration of the juvenile's ability to appreciate the nature and seriousness of his or her conduct; (i) whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision for a period extending beyond his or her minority and, if so, the available alternatives best suited to this purpose; (j) whether the victim or juvenile agree to participate in restorative justice; (k) whether there is a juvenile pretrial diversion program established pursuant to sections 43-260.02 to 43-260.07; (l) whether the juvenile has been convicted of or has acknowledged unauthorized use or possession of a firearm; (m) whether a juvenile court order has been issued for the juvenile pursuant to section 43-2,106.03; (n) whether the juvenile is a criminal street gang member; and (o) such other matters as the parties deem relevant to aid in the decision.

The customary rules of evidence shall not be followed at such hearing and, "[a]fter considering all the evidence and reasons presented by both parties, the case shall be transferred to juvenile court unless a sound basis exists for retaining the case in county court or district court." § 29-1816(3)(a).

As the Nebraska Supreme Court has explained, in conducting a hearing on a motion to transfer a pending criminal case to juvenile court, "[i]t is a balancing test by which public protection and societal security are weighed against the practical and nonproblematical rehabilitation of the juvenile." *State v. Aldana Cardenas*, 314 Neb. 544, 561, 990 N.W.2d 915, 928 (2023). "[I]n order to retain the proceedings, the court need not resolve every statutory factor against the juvenile, and there are no weighted factors and no prescribed method by which more or less weight is assigned to a specific factor." *Id.* "[T]he burden of proving a sound basis for retention lies with the State." *Id.* at 557, 990 N.W.2d at 926.

Contrary to the district court's findings that virtually all of the § 43-276 factors weighed in favor of retaining the case in district court, Milton argues that nearly all of them support a transfer to juvenile court. We disagree as explained below.

Section 43-276(a) requires the court to determine the type of treatment the juvenile would most likely be amenable to. Milton contends that his challenging upbringing provided mitigating information that should have been considered by the district court. He points out that he was a victim of child abuse/neglect in 2009 and of a sexual assault in 2013. His father is in prison and has not been involved in raising him. Despite this, Milton has made "valiant efforts." Brief for

- 4 -

appellant at 16. He cites a March 2024 progress report from OHB which commends him for having had no violations since his prior court date and being "ahead of grade level" in his studies. *Id*.

Although we recognize Milton's efforts while at OHB, we cannot ignore the plethora of services he had been provided since his introduction to the juvenile justice system in 2021. As evidenced by a May 20, 2024, memorandum from probation, Milton has been offered, and participated in, the following services: psychological evaluation, chemical dependency evaluation, psychiatric evaluation, sex risk assessment, crisis stability, day reporting, evening reporting, family support, multisystemic therapy, and gang intervention. He was subject to electronic monitoring, shelter care placement, and a group home. Despite all of these services, he still absconded from the group home and involved himself as the driver in a drive-by shooting. Consequently, we find no abuse of discretion in the district court's determination that this factor weighed in favor of retaining the case in district court.

Milton argues that § 43-276(b), whether the offense involved violence, should have been resolved in favor of a transfer because he was not the shooter. We disagree. According to another passenger in the vehicle, Milton picked him up in a stolen vehicle for the purpose of committing the shooting. Although the State does not assert that Milton fired any shots, he was an integral part of the crime. Not only was he the driver, but according to one passenger, he acquiesced in the shooting, encouraging the group to "fuck that shit, do it." We agree this factor weighs in favor of retention with the district court.

Section 43-276(c) requires the district court to consider the motivation behind the crime. Milton contends the "motivation for the offense lies with Milton's friends." Brief for appellant at 17. He posits that although retaliation was the motivation for the other juveniles involved, there's no clear motivation shown for Milton. However, the offense was gang-related, and Milton admitted that there was an "ongoing beef between gangs and retaliations for being shot at." So although Milton may not have been "friends" with the person whose house had previously been shot at, he was acting in concert with his passengers to seek revenge for that shooting. We agree with the district court that Milton's motivation was revenge or retaliation and that this factor weighs in favor of retention.

The fourth factor contained in § 43-276(d) is the age of the juvenile and the ages and circumstance of others involved. All three individuals were 16 years old at the time of the shooting. Milton concedes he was a willing participant but quarrels with the district court's "guilt by association" approach. Brief for appellant at 18. However, there is no evidence of coercion, and according to one passenger, Milton encouraged the shooting. Furthermore, at the time of the transfer hearing, Milton was 17 years old, giving him limited years of juvenile services, which would likely be an insufficient amount of time for treatment considering the lack of progress he had made with his prior years of services.

Although Milton recognizes that his previous history may weigh in favor of retention in the district court under § 43-276(e), he still asserts that the district court failed to consider the progress he had made. We acknowledged Milton's progress in our analysis of § 43-276(a), but his criminal history as set forth in the background of this opinion weighs in favor of a finding that a sound basis for retention in the district court exists. This is Milton's sixth court case in which it is alleged he engaged in criminal activity. Despite a multitude of services being provided, including

being placed in a group home, Milton continues to violate the law. We find no abuse of discretion in the district court's finding.

Section 43-276(g) requires the court to consider public safety. Milton again argues that his co-defendants fired the shots and not him; therefore, he was not the one to place the public at risk. We reject this argument. Milton not only drove the vehicle that enabled his passengers to fire at the house, but according to one of the passengers, he encouraged them to do so. We agree with the district court that this factor weighs in favor of retention in the district court.

Regarding § 43-276(h), Milton's ability to appreciate the nature and seriousness of his conduct, Milton argues that because the district court found his appreciation to be that of a "typical sixteen year-old male," this factor should have weighed in favor of a transfer. Brief for appellant at 20. He points out that scientific research supports a finding that teenage brains are not developed to make well-reasoned decisions. While that may be true, the evidence indicates that the events were intentional and premeditated. The police reports indicate that Milton absconded from OHB shortly after midnight by contacting a ride using another person's phone. Milton drove to an acquaintance's house and picked him up for the purpose of shooting at the house. According to this passenger, they parked outside the house for "approximately 45 minutes." Milton was described as "hesitant" because he had to return to OHB, but eventually said "Fuck that shit, do it." They then drove around the block before shooting at the house. Although Milton's timeline does not correspond to that of his passenger, shots were reported fired at approximately 1:40 a.m.

Following the shooting, officers spotted the vehicle and shined lights into it, so they all fled the area. One passenger left on foot and Milton continued to flee in the stolen vehicle. After a short foot chase, Milton was apprehended.

The events of the evening and Milton's subsequent attempts to evade police evince Milton's appreciation for the nature and seriousness of the crime. We find no abuse of discretion in the district court's determination that this factor weighs in favor of retention in the district court.

Section 43-276(i) requires consideration of whether the best interests of the juvenile and the security of the public may require that the juvenile continue in secure detention or under supervision beyond his minority. Milton contends the State failed to produce evidence that he could not be rehabilitated prior to reaching the age of majority. Although we note the absence of direct evidence that Milton can be timely rehabilitated, his history supports that he cannot.

Milton began receiving services in November 2021; however, he continued to be involved in criminal activities. Despite an increasing level of services, Milton's criminal actions increased in severity. We previously identified the plethora of services and programs available to Milton, yet none had a deterrent effect. The record supports a conclusion that Milton cannot be rehabilitated before he reaches the age of majority. Milton concedes that this factor may "in final analysis" weigh in favor of the State, and we agree. Brief for appellant at 20.

Milton does not seriously contest the other factors contained in § 43-276 which the court found in favor of retention; rather, he argues that they alone do not provide a sound basis for retaining the case in district court. But the decision to retain or transfer a case is based on a balancing test and there are no weighted factors. See *State v. Aldana Cardenas*, 314 Neb. 544, 990 N.W.2d 915 (2023). Our review of the district court's findings on each of the factors supports its determination that a sound basis exists for retention in the district court. Accordingly, we affirm its denial of Milton's motion to transfer his case to the juvenile court.

## CONCLUSION

A sound basis exists for retention of Milton's case in the district court; therefore, we find no abuse of discretion in the district court's denial of his motion to transfer his case to the juvenile court.

AFFIRMED.